## GERNET *v.* UNITED STATES (No. 1125).[1]

PRINTED MATTER ON SURFACE-COATED PAPER.

> The merchandise consists of fashion plates made of surface-coated paper with samples of embroidered or appliquéd dress goods attached for use mainly in mail-order business.  These goods are not properly "samples," but are printed matter on surface-coated paper, coming into competition with like commercial articles produced and for sale in this country.  They were not, accordingly, entitled to free entry.

### United States Court of Customs Appeals, October 24, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31319 (T. D. 33194).
   [Affirmed.]
*Comstock & Washburn* for appellant.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

An importation at the port of New York consisting of ornate, complete, and attractive fashion plates of surface-coated paper, approximately 6½ by 9½ inches in size, to which are attached in one corner on a vacant space made therefor samples of embroidered or appliquéd dress goods in size approximately 2 by 2 inches.    There is printed upon the plate advertising matter, exploiting the quality of the goods, stating the colors and shades of them and of the embroidery, their character as washable or otherwise, the measurements of the material for the skirt and for the waist, the prices for the complete dresses, with other advertising matter, and the name of the firm vending and advertising the articles.    The fashion plates are in small surface-coated paper boxes with printed labels.

It will be particularly noted in passing that the importation consists of two distinct classes of merchandise, the fashion plate upon surface-coated paper, as above described, and a sample of the merchandise described, which is referred to in the printed matter upon the fashion plate.

---

[1] Reported in T. D. 33834 (25 Treas. Dec., 353).

These articles are not intended to be placed in the hands of salesmen or to be distributed through branch houses for the use of salesmen, but are intended to illustrate to the individual customer to whom sales are made directly, particularly by mail, the character and class of the merchandise thereby offered. They are in fact composed of two articles.

The testimony discloses that the value of the importation resides not alone in the materials imported but in certain items of labor, such as in pasting the articles together and putting them up in the boxes ready for shipment. They were assessed for duty by the collector at the port of New York as printed matter, etc., at 5 cents per pound and 30 per cent ad valorem under paragraph 411 of the tariff act of 1909. The protest challenging this assessment for dutiable purposes claims free entry for the merchandise in that—

It consists of samples of no commercial value and is therefore free of duty in accordance with the customs practice which has prevailed for many years.

The history of this practice and the underlying reasons therefor are reviewed and recited by this court in Badische Co. v. United States (4 Ct. Cust. Appls., 374; T. D. 33535), wherein the court, speaking through Judge Barber, stated:

It is said by the importers in their brief that the practice of admitting samples free of duty has been so long and well established by the regulations of the Treasury Department and the practice thereunder that it should not be changed except by act of Congress. We do not agree with this view. It is only by virtue of the rulings of the department that any samples have been admitted to free entry, because those samples as well as others are within the term "merchandise" as defined in section 2766 of Revised Statutes, which provides that merchandise for tariff purposes "may include goods, wares, and chattels of every description capable of being imported," and also are within the present tariff law, which in effect provides, in its specific and "catch-all" provisions, for the assessment of duties upon all imported merchandise unless free entry is elsewhere therein given. The importer at best can only claim under the favor of the Treasury regulations. These regulations provide that samples to be entitled to free entry must be such as "are obviously intended for use merely as samples of merchandise to sell the class of goods which they represent," which concededly these are not.

The court in that case quoted from Treasury decisions and decisions of the Board of General Appraisers and mentioned with significance the fact that in that case, as here, there was no appeal to reappraisement by the importer and that the goods were invoiced and entered at a value.

The character of this merchandise, however, does not render it necessary to rest this decision upon the fact that the goods were invoiced and entered at a value, or upon the theory that the importer has mistaken his remedy in not appealing to reappraisement, but upon the salient point in the case that such merchandise as this is not "samples" within the theory of any of the Treasury or board or court decisions holding such entitled to free entry upon the theory of the "favor" extended such by the customs rulings of many years,

which seem to be acquiesced in by implied congressional approval. Primarily it may be said that the theory of these rulings is that the merchandise is of no *commercial* value. This was effected in the individual cases largely by rending or perforating or otherwise injuring the pieces of merchandise imported for the purpose of exhibiting the quality of the goods they represented.

In cases like these, however, where the importation consists not alone of a *sample,* but in conjunction therewith and as a part of the importation of which the sample constitutes but an incidental part, printed matter complete and of great commercial use, it can not be said that the merchandise is without any commercial value. Moreover, in such cases as these it can not be said that the merchandise is properly characterized as a *sample,* for, as a matter of fact, it is not alone a sample, but it is primarily and chiefly surface-coated paper printed and packed ready for shipment, which, while it is not intended for sale in this country, nevertheless enters into competition with such commercial articles produced and for sale in this country.

We do not think within the reason of the rulings of the Treasury Department and the board such merchandise is entitled to be admitted as samples, for it is not samples, but printed matter on surface-coated paper.

The decision of the Board of General Appraisers overruling the protest is *affirmed.*